# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

KELLY GOULD                                                                       PLAINTIFF

V.                    CASE NO. 3:16-CV-00294 JTK

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION                                               DEFENDANT

## ORDER

### I. Introduction:

Plaintiff, Kelly Gould, applied for disability benefits on May 8, 2014, alleging a disability onset date of April 24, 2014. (Tr. at 12). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 23). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Gould has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

### II. The Commissioner's Decision:

The ALJ found that Gould had not engaged in substantial gainful activity since the alleged onset date of April 24, 2014. (Tr. at 14). The ALJ found, at Step Two of the sequential five-step analysis, that Gould has the following severe impairments: chronic pain syndrome, rheumatoid arthritis ("RA"), degenerative disc disease of the lumbar spine, osteoarthritis, fibromyalgia, depressive disorder, and obesity. *Id.*

At Step Three, the ALJ determined that Gould's impairments did not meet or equal a listed

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

impairment. (Tr. at 15). Before proceeding to Step Four, the ALJ determined that Gould had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) she could not climb ladders, ropes, or scaffolds; (2) she could only occasionally climb ramps and stairs, or balance, kneel, crouch, or crawl; (3) she could have no exposure to unprotected heights or hazards in the workplace; (4) she could only frequently handle and finger; (5) she could perform unskilled work with specific vocational preparation ("SVP") of one or two; (6) interpersonal contact must be incidental to the work performed; and (7) the required supervision must be simple, direct, and concrete. (Tr. at 17). The ALJ next determined that Gould is unable to perform any past relevant work. (Tr. at 21). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Gould's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 22). Based on that determination, the ALJ held that Gould was not disabled. (Tr. at 23).

### III. <u>Discussion</u>:

    A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting

*Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

    B.   Gould's Arguments on Appeal

Gould argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the assigned RFC did not reflect all of her limitations and that the ALJ did not conduct a proper credibility analysis. For the following reasons, the Court finds that substantial evidence supports both the RFC and the credibility determination.

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

Gould suffers from chronic pain arising from lumbar degeneration, RA, and fibromyalgia. A 2014 MRI of the lumbar spine showed mild disc bulging and mild bilateral foraminal narrowing with no canal compromise. (Tr. at 420, 451). A nerve conduction study on April 21, 2014 showed no evidence of lumbar radiculopathy, neuropathy, or chronic myotomes. (Tr. at 415, 493). Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

Although on May 22, 2014, Gould tested positive for RA, she told her doctor in July 2014 that her pain was better and that she did not have any low back pain over the previous two weeks. (Tr. at 491). Dr. Kenneth Chan, D.O, found Gould to be asymptomatic, so he did not refer her to a neurologist. (Tr. at 493).

RA testing in July 2104 showed normal sedimentation rate and uric acid levels. (Tr. at 402-406, 458-463, 486). Radiographs of the feet, knees, and hands, showed no bony abnormality with mild degenerative changes and healed post-traumatic changes of the left wrist. (Tr. at 489). The x-ray showed no evidence of inflammatory arthropathy. *Id.*

Clinical exams consistently showed normal gait, stance, balance, muscle strength, and muscle tone. (Tr. at 508-509, 400, 542, 579, 602). On July 21, 2014, Gould demonstrated normal coordination and arose from a chair with fluid movement. (Tr. at 508-509). Again, mild clinical results undermine Gould's claim of disability.

Gould treated her pain conservatively, with Metaxalone, Celebrex, Prednisone, and Nucynta; she had trigger point injections but did not pursue physical therapy or surgical intervention for her back. (Tr. at 398-409, 411-414). The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). On at least three occasions, Gould said her pain medications were effective. (Tr. at 471, 542-545, 550-552, 558-560). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

Gould underwent an endvenous ablation of the right saphenous vein on November 11, 2014; clinic notes show that Gould walked out of the office without problem, and that the treatment was successful. (Tr. at 516, 526). On February 9, 2015, her surgeon noted "real improvement" post-surgery. (Tr. at 515).

Gould raises alleged problems with her hands in making her argument that the RFC should have included manipulative restrictions. However, Gould did not alleged problems with her hands on her application. (Tr. at 97). *See Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011)(in affirming

4

ALJ's finding of no mental impairment, the court noted that claimant did not allege mental impairment on the application for benefits). Moreover, Gould worked for years with alleged hand pain. (Tr. at 55, 75-76, 261). Working for years with the same symptoms alleged to be disabling undermines credibility. *Gowell v Apfel*, 242 F.3d 793, 798 (8th Cir. 2001). Finally, treatment for deteriorating hand problems arose after the date of the hearing decision. To be considered material by the Appeals Council, new evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition. *See Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997).

The ALJ accounted for Gould's pain by assigning postural limitations in the RFC. Mild testing results, conservative treatment, and positive response to medication suggest that the RFC for light work was appropriate. The RFC was supported by substantial evidence, and contrary to Gould's assertion, further development of the record was not required.

Similarly, the ALJ's credibility analysis properly considered the record as a whole.[2] Before coming to a conclusion on a claimant's credibility, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including prior work record, as well as observations by third parties and treating and examining physicians regarding: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating

---

[2] Social Security Ruling 16-3p, 2016 SSR LEXIS 4, removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. It became effective on March 28, 2016, but the underlying analysis still incorporates the same factors discussed in *Polaski* and requires the ALJ to make a determination based on all evidence in the record. *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017). The Court notes that the hearing decision in this case pre-dated the effective date of SSR 16-3p, so the Court assumes the standard credibility analysis here.

factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

An ALJ "has a duty to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

In addition to weighing Gould's conservative treatment and the effectiveness and side effects of her medications, the ALJ also considered Gould's daily activities to make a credibility finding. She can attend to personal hygiene, do some cooking, shop in stores, drive, and ensure her children get up and off to school in the morning. (Tr. at 16, 271-275). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). Gould's activities of daily living lined up squarely with the medical evidence, which showed only mild to moderate impairments. The ALJ properly considered the *Polaski* factors in his credibility analysis.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ's RFC and credibility determinations were proper. The finding that Gould was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 21st day of November, 2017.

_____
UNITED STATES MAGISTRATE JUDGE